Thank you, Your Honors. May it please the Court, Sean Sitar for Plaintiff and the Appellant. In this putative class action, we respectfully request the Ninth Circuit to reverse the trial court on multiple and several grounds. The first cause of action, or the minimum wage cause of action, we feel that we followed the Court's directions in the initial motion to dismiss, motion to strike. We cured all deficiencies in accordance with Rule 8, Landers, and the California Supreme Court's decision in Perlequin, and the Court erroneously dismissed the case. And not only dismissed it, the Court dismissed it without leave to amend, giving us an additional opportunity to cure deficiencies which we feel necessarily we didn't need to cure. But if we had cured, we would have cured rather easily. What particular issue are we talking about now? This is the minimum wage claim and the overtime claim where we identified 65 days, and we that was very similar, if not identical, to the facts set forth in the Perlequin v. Appell case. I gather one of the objections is that you didn't demonstrate that there was actually overtime. I mean, in other words, these people were coming, the main point is they were coming out the door or coming in and they had to spend half the time clock getting cleared to come in. Is that basically the overtime claim? Well, that's the low-hanging fruit pertaining to this claim is the minimum wage claim. And if plaintiff worked in excess of 8 hours a day or 40 hours a week, there would be overtime due and owing. Okay. And where does the complaint say how much that this was extra overtime? I understand that you're on pretty strong ground in terms of the fact that it would be at least be compensable time. But what about it being overtime? We pled allegations in the complaint and we identified 65 days where the plaintiff worked or believed that he worked over 8 hours a day and 40 hours a week. Where is it saying that? Tell me where. I see all the days, but with regard to, let's see, there's missed meal periods, missed rest period, off-the-clock work, let's see, that they've spent time before clocking in and waiting, but they're not paid plaintiff for off-the-clock work five days a week. But where do we get that it's overtime? It's over 40 hours. It's over 8 hours in the day. I believe we pledged, you know, if I can address that issue in the rebuttal, I can look through the complaint. I believe we pled that very specifically that they worked over 8 hours a day or 40 hours a week. They're entitled to overtime wages. Well, of course they are, but you don't, and maybe I think it's someplace else in the complaint, but it's not in any obvious place. All right. Go ahead. Okay. You're talking kind of in the sky. It would be helpful to be more specific. Okay. I apologize, Your Honor. In relation to the minimum wage and overtime claims, we believe that we identified the days. We believe that we cured the deficiencies raised by the district court, and there was only one order that the district court rendered prior to dismissing the case prejudice, and we believe that under the current standards, we should have been given another opportunity to amend the complaint and to cure any of the deficiencies. In relation to the meal break claim, it's the same issue. We feel that we cured all of the deficiencies raised by the trial court, and then there were additional pleading standards that the district court raised in the most recent ruling concerning a plaintiff needing to allege that they could not extend the meal break beyond a certain period of time to ensure that there's a 30-minute meal break. There is never any discussion. The California Supreme Court was clear and emphatic in the Augustus decision that your meal breaks and rest breaks need to be uninterrupted. There's absolutely, unequivocally, no dispute about it. When you leave a facility, and you come back in, and you're waiting in line, and you're not being paid for 5 to 15 minutes per day per shift when you left. In other words, it's not just when you're coming into the facility in the morning, but if you take a meal break or a rest break, you're having shortened meal and rest breaks. You're having interrupted meal and rest breaks. We also alleged other allegations. They weren't scheduling the meal breaks, and we feel that those are clear violations. We identified specific days that those occurred, and that was improper. Concerning the 226 claim, we disagree with the court's interpretation of Maldonado and whether the 226 violation was knowing and intentional. I have no idea what you're talking about, but just tell me what you're talking about. Okay, I apologize. We have a cause of action under Labor Code 226 seeking penalties because of inaccurate wage statements, because the gross wages, the net wages, the hours worked were incorrect. Counsel, did you argue that the Schneider Logistics did this knowingly and intentionally? We did argue that. Schneider Logistics aided the Security Act. Where is that alleged in your complaint? You know, it's not really helpful to come in here in a case in which the whole question is what you alleged in your complaint and where you have been said to not have alleged adequately and not know what's in your complaint. It's not helpful. Anyway, would you please show us where it is? Apparently you can't, so we're not going to know where it is. So 226 is your fourth cause of action. And you quote the statute. That's correct, Your Honor. I'm looking at your third amended complaint. So paragraph 89 says they have failed to provide as described above. But that doesn't say, okay, it says, let's see. And paragraph 90 says it was intentional. Intentional. So is paragraph 90 your best statement? Your Honor, the complaint speaks for itself. All you have to allege is that you just have to repeat the word intentional? Do you have to prove anything else or assert anything else? I mean, there's no factual allegation that accompanies that. Well, it's a willful violation. And under Iqbal Twombly, we need to utilize, you know, common sense and the basic allegations. We have factual allegations that the company created the security check. They must know by creating the security check. I'm sorry? This is an allegation about the wage statements.  And I'm not sure that if they believed that they could lawfully do this, that that would make them intentionally and knowingly providing you with false statements. I think the knowing and intentional, I mean, they have an affirmative obligation to include all hours worked on the wage statements. Sure, but if the defendant has a good faith belief that they are following California law, I don't see that providing you with a wage statement would violate 226. And that's what the district court said. The court said it was derivative. There's no good faith belief when we have the California Supreme Court saying that the conduct is unlawful. There's been no, and this is just the cleaning stage. You know, they could pretend. The California Supreme Court case you're talking about is Frolkin or something else? Frolkin, the apple. But that was after all the events that happened here, right? That was, yes, that was after all the events. There's also. So, therefore, that can't be the subject of, to prove a good faith, just prove a good faith. So, what just proves a good faith? Well, this is not a summary judgment motion. This is just at the pleading stage, and, you know, there's a completely different bar. Also, there's a case called Troster v. Starbucks that said, that came down about four years ago, that said that all hours worked needs to be paid. There's a case called. I'm sorry? That's not. I mean, that's not. That just feels like that is such a platitude that I'm just not sure that puts an employer on notice. Of course an employer has to pay for all hours worked. I mean, that's obvious, right? That doesn't make every wage statement in which somebody believes they were underpaid an intentional and knowing violation of California law. It actually does, because there's dozens, if not hundreds, if not thousands, of different ways an employer can push employees to work off the clock. So, under the standard that, you know, perhaps this court wants to adhere to, unless there's some court of appeal decision that's specifically on point, that has the same exact facts, that has the same exact situation, there's a court of appeal decision on point, that can't be the case. All hours worked needs to be. Can you briefly address the class allegation which was said to be overbroad and so the class was not allowed? We. Go ahead. Please, if there's additional. No, go ahead. We tried to whittle it down in accordance with the trial court's order. But he basically told you what to say and you didn't exactly say it. I mean, I think it's pretty clear what you meant, but it wasn't written very well. We could have written it a little bit better, I agree. The intent was to narrow it down in accordance with the trial court's order. In other words, the people that were employed by staffing agencies were the people who were employed by this employer with staffing agencies, not other people who were employed by staffing agencies. Precisely. The intent was not to overstep and just plead the same class definition that the court took issue with. We agreed with the court. I agreed personally with the court that the class definition was perhaps a little bit overbroad. It was a lot overbroad originally, but the last version seems to have been just slightly grammatically not ideal, but probably pretty obvious what you meant. We agree with your Honor's analysis on that point. If I can reserve the additional one minute for rebuttal, please. Please, Jim. Thank you. Ms. Redpath. Good morning, and may it please the court, Elizabeth Redpath for Schneider. The district court correctly dismissed plaintiff's third amended complaint, and this court should affirm. Plaintiff concedes that all but his off-the-clock claim and his meal-rest period claims are derivative. Thus, the court issue on appeal is whether he has satisfied federal pleading standards with respect to those two claims. Can we start with the class definition first? Yes, Your Honor. What does the third amended complaint say? The third amended complaint, and going off the top of my head, I can find the complaint quickly if you give me a chance. I'm going to say the same thing to you that I said to your colleague. This is a motion to dismiss. The complaint's not very long, and we're only discussing a motion to dismiss the complaint, and it would be nice if you knew what was in it. Go ahead. Yes, Your Honor. So the class definition in the complaint, the problem with it is it's and or any staffing agencies. So it sweeps in. Read literally, it sweeps in anyone employed by a staffing agency in California. But obviously, I mean, in context, would anybody really think that's what it meant? And if that's the problem, couldn't the district judge simply have clarified it himself, and this is an exercise in an eighth-grade grammar class? Your Honor, I think even if you're willing to give the plaintiff the benefit of the doubt on that, that what he meant there was any employee jointly employed by a defendant in a staffing agency, there's still problems with that definition. It's still overbroad. It doesn't specify locations. It doesn't specify job types. It's truly about as broad as you can get in terms of a class definition. Was that the basis on which the district judge denied? Yes, Your Honor. I think that was the basis he said. It was overly broad. He pointed to what we just spoke about, which was the issue with and or staffing agencies and the fact that, you know, you can't possibly have a class definition where the defendant, in this case Schneider, had absolutely no employment relationship with some of the class members. Isn't the real problem that that and or staffing agency didn't change between the second amended complaint and the third amended complaint? Your Honor, I think that's correct. So when the court dismissed the second amended complaint, it said, you know, it said to remove the third-party language, and I think that's where the confusion occurred, but it also was very clear that what it was looking for was a class definition that didn't sweep in employees that had no employment relationship with the defendant in this case. And when you leave in the and or staffing agencies without specifying some relationship between the staffing agencies and the defendant, the employer here, that's a problem. All right. You want to go on to some other issues? Sure. So, again, he concedes that all but the off-the-clock claims and the meal rest period claims are derivative. So in Landers, this court said that a plaintiff must draw on memory and personal experience to develop factual allegations with sufficient specificity that they plausibly state a claim. Legal conclusions and generalized allegations of the kind we see here are simply not enough. Plaintiffs' off-the-clock and break claim rely on the allegation that he waited in security lines. If the security lines were not compensable time, both claims fail. This court can affirm on that ground alone. Why were they not compensable time? Your Honor, the only allegation in this complaint about the security lines is that plaintiff waited in them for five to 15 minutes. After two and a half years and four complaints, that's all we know about these security lines. To get around that, he argues that Furlikin establishes kind of this categorical rule that any time you spend waiting in line is compensable time, and that's simply not the law in California. What Furlikin tells us is that it's a really fact-intensive analysis. The facts matter. In that case, the court in Furlikin applied existing law to Apple's bag search policy, and there were a bunch of facts that they looked at showing that that activity was required, showing that there was an exertion of employer control. Be specific. These people, you come to work, and before you clock in, you have to wait in line five or 15 minutes. Is the problem that maybe they don't have to wait in line, or that they can go somewhere else and come back? Or what are the options in terms of the allegation is I have to wait in line for five or 15 minutes, and where do you get in? I have no choice about that. Is that not at least alleged that much of it? Well, a few points, Your Honor, on that. So he doesn't. I think there is some daylight between I have to and I'm required to do something. Really? Sorry. Ordinarily, when you say you have to do something, it means you're required to do it. Well, I say that I have to do things. All right. So if he's not required to do it, then how does he get in the building? So we don't know. We don't have enough facts in the complaint to really understand anything about. He's just taking it on promptly and just making fun of it practically, in the sense of what any ordinary person would understand somebody to mean when you say, I have to stand in line in order to get in the building, and I'm not paid for that time. Why isn't that enough? Even if you're willing to infer that he was required to do it, that's not enough under FERLA. But he said he was. He said, I have to do it. That's not requiring me to do it? I don't have any choice about doing it? I think it's important that this was his fourth try on this complaint. Could you give me a scenario in which you have to stand in line, but you're not required to stand in line? Yeah. Your Honor, I think if all you have to plead, as he pleads in this complaint, is that I stood, I waited in line, and that's compensable time. I had to wait in line to get in the building. Your Honor, I think my point still stands. If all you have to plead is I had to wait in line for five to 15 minutes, you can imagine many situations or scenarios at work where an employee, prior to beginning the employee's workday, has to wait in some sort of line. I waited in line. Counsel, the security check feels very different from saying I had to go to the bathroom after lunch and I had to wait a few minutes until there was a vacancy in the hall. Okay, that's sort of an ordinary thing. But this is an employer-required processing. And if he's alleged every day I had to wait between five and 15 minutes before I could get in and get to the clock and had to pass him the security check, why isn't that enough? I understand, under Verlecken, you want to dispute everything, but I don't understand why, at a motion to dismiss, that's not enough. Great, you want to dispute it? Great, that's why we have summary judgment. That's why we have discovery. You get to ask all the questions you want. But I don't understand why, at the motion to dismiss, I'm with Judge Verzog. This seems to make fun of it all. That's pretty fundamental. My employer requires me to stand in line. I stood in line five to 15 minutes, and I wasn't paid for it. So what's the problem? Again, even if you're willing to infer that he was required to wait in line, I think Verlecken requires more. It gives us five, a non-exhaustible. Why does it require more to plead? Well, I think the reason, I mean, so I respectfully disagree that this complaint comes anywhere close to satisfying the pleading requirements in Fombley and Iqbal and Landers. There's not sufficient facts. We don't even know, for example, that these are Schneider's security lines. We don't know that they're not controlled by a third party. We don't know that this isn't a huge campus with multiple employers. Right, but that would, that feels like that might be a good defense. They sued your client and said Schneider was requiring us to wait in line. Now, whether Schneider was requiring them to wait in somebody else's line where Schneider has allocated the security check to somebody else or whether it's the building where Schneider is located and it's the landlord who's requiring the general security check, why would that matter? And if it does, maybe it's a good defense. I don't understand why it doesn't satisfy a motion to dismiss. I think it matters because if you find that all that's required, all you have to allege to state a claim for compensable time is I waited in line for five to 15 minutes, I think that opens the door to a lot of complaints. They didn't say that. They said they have to go through a security check when entering or leaving the facility. And the security check, respectfully, is a label. There's no additional facts about the security check. There are a range of security checks, right? Was it a security guard who merely waved them through? Was it a metal detector? Was it a full TSA? Okay, counsel, so why would it matter? I mean, if it's a full TSA, that's fairly invasive. And not unusual, even in industrial cases. But let's suppose that there's 1,000 employees who get into this facility and it's just a minimal, you know, open your purse, open your jacket, okay, but there's only one guard. I mean, 1,000 people who need to clear in there. Why does that make a difference? I think the facts matter. And what's a little bit, I mean, unusual here is this is not a case where these are facts that he should have had in his possession, right? So this was his lived experience on a daily basis, allegedly. And he didn't need discovery to get these facts, and he had four tries. And also the employer knows something about this too. I mean, if you're making an exercise out of something. Right. But I think when a district... Go ahead. I'm sorry. I'm sorry. I was going to say, I think... That's why we have discovery and we have trials. And, well, anyhow. I'll wrap that up just by saying when the district court said, when the district court dismissed the second amended complaint, it said plead facts showing how waiting in line can constitute overtime. And I think that's precisely what the court meant. And I think his failure to do that... First of all, it doesn't have to constitute overtime to be a cause of action, right? It could just be unpaid time. That's number one. So, at a minimum, he gets by that. And in terms of overtime, he does allege at the outset that he ordinarily worked eight hours a day, 45 days a week. Yes, Your Honor. He alleges his typical schedule, and he also... And, again, I would say he uses the word typically in that allegation that I think you're looking at right now. He also then gives you a list of 65 days. He says approximately five days a week, but then he says on these 65 days, I was not paid for all hours worked. What Landers very clearly requires is for him to connect those two allegations. So, for him to say, for example, I think the first date in the list is January 9th, 2017. On January 9th, 2017, I worked eight hours, or I worked for eight and a half hours, and I wasn't paid for that additional half hour. Isn't it fair inference from the two statements that since he's now listed 20 or 30 days, I haven't counted how many, and since he typically works an eight-hour day, that on at least some of those days he was working an eight-hour day? So, and that's his argument, right, that necessarily you should connect those two dots. But Landers, I think, is very clear on this point. Landers cites approvingly with approval cases from the Second Circuit and Third Circuit with allegations very similar to this where there's a typical work week on the one hand, and on the other hand, there's off-the-clock work, but they've never connected the two dots and said the off-the-clock work happened on a typical work week. So, in other words, I worked overtime on a given work week. And Landers, that's essentially the holding in Landers is that you've got to connect those dots. I'll turn now to plaintiff's meal and rest period claims. As you know, he tries a number of theories. We've talked at length about the security lines. I will point out an additional deficiency with respect to the security lines, and that is that he never alleges that he could only be clocked out for 30 minutes. So, if Schneider gave him 30 uninterrupted minutes, there's no violation. Next, he says there's no formal written policy. This theory fails as a matter of law. This court recently held in Davidson that a facially defective policy, absent any facts or evidence that it was implemented in an unlawful manner, does not state a claim for a violation of California law. The same rule applies here. With respect to his scheduling theory, he, again, has no support in the law. He's not able to cite any cases other than Brinker in support of that. What Brinker says is that breaks must be authorized and permitted. It doesn't say that they need to be scheduled. Not to mention, all of these allegations are flatly contradicted by his allegation that Schneider announced breaks and meals over a loudspeaker. I think announcing breaks and meals over a loudspeaker is the opposite of not allowing them. And finally, he vaguely alleges that he had too much work to take a break, but he, again, has no facts to support that claim. He also ignored the district court's instruction there, again, that he plead facts showing that he was impermissibly denied those breaks as opposed to he skipped them by choice. Counsel, you've got one minute left. Would you turn to the PAGA claims, please? Are you asking me, Your Honor? Or Defense Counsel? No, I'm asking Ms. Redpath to turn to the PAGA. Just a minute, please. Ms. Redpath. Sure, Your Honor. I'm getting there right now. Okay. Would you please tell me why the district court's correct on this one? The district court ruled that this was a derivative claim, and plaintiff has conceded that. Okay. So if we were to reverse on the meal and rest breaks or the wages and overtime claim, then we would also have to reverse on the PAGA claim. You don't dispute that? The only ground that the district court gave for dismissing the PAGA claim was the fact that it was derivative of those claims. I will note, since there were some questions on the wage statement claim, paragraph 90 is the only paragraph where he alleges any type of intent. That's not sufficient. He also has abandoned that issue on appeal. That was definitely one of the grounds that the court ruled on. In its order dismissing the third amended complaint, he didn't address it at all in his opening brief. There's some argument in his reply brief, but I think he's abandoned that issue. Okay. Thank you very much, Ms. Redpath. Mr. Sitara, I think you have a minute and seven seconds, it looks like. Thank you. I would like to just close simply by refocusing on the fact that these are California wage and hour violations. But the pleading standards are federal standards, right? The pleading standards are federal standards. But the extent of what needs to be plead, pled, and proven is in dispute. Defendant claims that in order for us to have had a proper meal and rest break violation as a result of the security check, at least this is how we interpret the court's ruling, we needed to plead that we could have taken in excess. We could have asked for, for example, a 45-minute meal break, and therefore we would have had a 30-minute uninterrupted meal break if for some reason the meal break was extended. So the meal and rest break issue, which is in dispute in terms of the standard of what needs to be proven for a violation, this is remedial in nature, and we think interrupted meal breaks, shortened meal breaks as a result of the security check, not scheduling meal breaks, and all of the other reasons that we set forth is sufficient for the court to deny the motion. Thank you. Okay, thank you. The case of Clark City v. Schneider Logistics is submitted and will take a 30-minute break. Thank you. Thank you, Your Honor. This court stands on recess.
judges: Berzon, Bybee, Cardone